# EXHIBIT 7

CAUSE NUMBER 2009-76323

| | | |
|---|---|---|
| KEVIN ORTON, NORTHPARK OFFICE TOWER, L.P., AND NORTHPARK OFFICE TOWER, G.P., L.L.C. | : | IN THE DISTRICT COURT |
| V. | : | HARRIS COUNTY, TEXAS |
| ALI CHOUDHRI, NAEEM CHOUDHRI, JETALL COMPANIES, INC., OSAMA ABDULLATIF, AND ERPILE, L.L.C. | : | 129th JUDICIAL DISTRICT |

*************************************************

NOVEMBER 30, 2009

*************************************************

On the 30th day of November, 2009, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

DONNA KING, CSR, RPR
OFFICIAL COURT REPORTER
(713) 368-6256

A P P E A R A N C E S

FOR THE PLAINTIFF, KEVIN ORTON:
Mr. Charles L. Duke, SBN 06184900
Attorney at Law
9225 Katy Freeway, Suite 200
Houston, Texas 77024
Telephone: 713-932-7776
Facsimile: 713-932-9782

FOR THE DEFENDANTS, NORTHPARK OFFICE TOWER, L.P., NORTHPARK OFFICE TOWER, G.P., L.L.C., ALI CHOUDHRI, and JETALL COMPANIES, INC.:
Mr. Richard E. Wakeland, SBN 00788912
Attorney at Law
5000 Travis
Houston, Texas 77002
Telephone: 713-530-9910
Facsimile: 713-789-3331

FOR THE DEFENDANT, ERPILE, L.L.C.:
Ms. Susan J. Taylor, SBN 19723665
TAYLOR LAW GROUP
Three Riverway, Suite 1800
Houston, Texas 77056
Telephone: 713-759-9970
Facsimile: 713-759-1980

P R O C E E D I N G

THE COURT: We are on the record in Cause Number 2009-76323, Kevin Orton, Northpark Office, et al. versus Ali Choudhri, et al. If I could have appearances for the record, counsel.

MR. DUKE: Charles Duke for the plaintiff, Kevin -- sorry. -- Kevin Orton.

THE COURT: Okay.

MR. WAKELAND: Your Honor, I represent Northpark, I --

THE COURT: Okay.

MR. WAKELAND: -- represent Ali Choudhri, and I represent Jetall, and we --

THE COURT: Hold on. The reason I'm making a face -- I'm confused because the style of the case is Kevin Orton and Northpark versus Ali -- whatever, and you're telling me you represent one of the plaintiffs and one of the defendants?

MR. WAKELAND: No, Your Honor. This is in error. The Northpark Office Tower, L.P., and Northpark Office Tower, G.P., L.L.C. --

THE COURT: Okay.

MR. WAKELAND: That is in error.

THE COURT: Okay. Just checking.

MR. DUKE: And we -- we understand

that.

MR. WAKELAND: And -- and -- and I've already had -- we've already had conversation with

counsel. It's just a typographical error.

THE COURT: All righty then. We'll just mark it up that way.

MR. DUKE: Yeah. In the original contract they were -- that was an issue on the other side.

THE COURT: Okay. So --

MS. TAYLOR: Your Honor --

THE COURT: Yes. Yes, ma'am.

MS. TAYLOR: Susan Taylor for Erpile, L.L.C.

THE COURT: Okay. All right. What do we have going on here? It looks like a foreclosure sale. Is this a fore --

MR. DUKE: There is a foreclosure set for 10:00 o'clock or as quick as they can get to it tomorrow on a building at 1415 Northpark -- I mean, North Loop West.

THE COURT: Uh-huh.

MR. DUKE: It's about a six- to ten-million-dollar -- maybe eight-million-dollar building, something like that.

THE COURT: Okay. Got an issue with stopping the sale for 14 days?

MS. TAYLOR: Yes, Your Honor.

MR. WAKELAND: I'm not the lender.

MS. TAYLOR: I'm the lender.

THE COURT: Okay.

MS. TAYLOR: I represent the lender. The person who's brought this suit is the guarantor on the note, has no standing to stop the sale. The note has been -- is matured. Matured in April of this year.

THE COURT: Oh, okay.

MS. TAYLOR: And we're in -- we are in contact with people who owe the note, and we're seeing if we can work something out. But Mr. Orton, who brought this, has no standing to prevent the sale.

THE COURT: Okay.

MR. DUKE: Mr. Orton is the guarantor -- personal guarantor on the note and to the best of our knowledge has not been noticed as to the details of the note being called, falling due, being demanded for.

THE COURT: But he's not actually --

MR. DUKE: And we sure --

THE COURT: -- an owner?

MR. DUKE: -- don't want an $8 million building to be sold for 2.5 million, which is the amount of the note.

THE COURT: Right. But I'm asking. Is he the owner? What's going on?

MR. ORTON: Excuse me. I can answer

that question. I'm a limited partner in Northpark --

THE COURT: No. Actually, you can't speak, sir. Sit down.

Yes.

MR. WAKELAND: No, Your Honor.

MR. DUKE: This has a long history to it. Your Honor --

MR. WAKELAND: It -- it does -- it does --

MR. DUKE: Go ahead.

MR. WAKELAND: -- have a long history to it. It does have a long history to it. He's a personal guarantor on the note.

MR. DUKE: And a partner.

MR. WAKELAND: And he -- he -- he is a limited partner. He -- he -- he's a limited partner in a -- in the partnership.

THE COURT: Uh-huh.

MR. WAKELAND: And that's it. All right?

THE COURT: The partnership, I guess, owns the buil -- who owns the building? How about we start with that.

MR. WAKELAND: The partnership owns the building.

THE COURT: Okay.

MR. DUKE: Northpark, L.P.

THE COURT: And your client is a part owner, or --

MR. DUKE: Correct.

THE COURT: -- he's a partner?

MR. DUKE: Correct.

MR. WAKELAND: He's a limited partner, Your Honor.

THE COURT: Okay. You keep telling me limited partner. Is there something in the partnership agreement that says he's a partner, but with respect to the building, has no ownership interest?

MR. WAKELAND: He's -- he has no ownership interest in the building. He's a limited partner in a partnership, Judge.

MR. DUKE: Partnership owns the

building. He owns part of the partnership.

MR. WAKELAND: He's a limited partner in the partnership.

THE COURT: Okay.

MR. WAKELAND: He does not own a building. He has no interest in the building other than the fact that the partnership does.

MR. DUKE: I mean, it's derivative interest, if you want to call it that.

MR. WAKELAND: If anything.

MR. ORTON: The partnership owns the

building.

THE COURT: I'm sorry, sir. I don't think that you heard me before. You're not before the Court today.

All right.

MR. WAKELAND: Judge, our position is --

THE COURT: Uh-huh.

MR. WAKELAND: -- is that we -- we do not want to see the building foreclosed upon. However -- all right? We, as a general partner and as a representative of the partnership -- we did not file this TRO. We are not asking for that because we have been in negotiations with the lender, and we've

been attempting to work this out.

It -- our position is -- is that -- is that this creates friction between -- between us and the lender and -- and -- and interferes with our ability to -- to work this out with the lender.

MR. DUKE: And our position is it's an eight-million-dollar building for this two-and-a-half-million-dollar note. He stands to take a hell of a beating, and it's 4 o'clock in the day -- in the afternoon on the day before it's going to be foreclosed on -- 10:00 in the morning. You know?

So whatever negotiations and good deeds and so forth -- and so forth obviously haven't

worked, so that's why we need a TRO, to be able to get in to this thing and sort it out.

MR. WAKELAND: Your Honor, I'm no real estate expert, so I can't tell you how much that building is worth.

THE COURT: Uh-huh.

MR. WAKELAND: I'm not going to rattle off how much it is worth. All right? But I am aware that -- that the lender feels that it has a value. Okay? We feel that it has a value. Apparently Mr. Orton feels it has value. All right?

The procedures, which I'm -- I'm not

expert in, that the lender has to go through associated with foreclosure are designed to fairly determine the value of the building at public sale.

Now, we -- we would love to avoid a foreclosure. However -- all right? -- we are -- we -- we -- what we don't want to do is we don't want to aggravate the lender by introducing something like this in -- in the mix and -- and getting in the way when we have negotiations already in place.

We have -- we have negotiated with the lender. We've been in negotiations with the lender. Mr. Orton has participated by giving us input. We have asked for his input. We have received input from him. We've gone back and forth with him, and we have -- as our -- as our position in the partnership

agreement, as -- and as the general partner, we have communicated our negotiations with the lender, and we are -- we are attempting to work something out, and we hope --

THE COURT: Well, it --

MR. WAKELAND: -- that something will --

THE COURT: -- sounds like -- hold on. It sounds like stopping the sale tomorrow would give you time to work it out, now, wouldn't it?

MS. TAYLOR: Problem is, Your Honor, Mr. Orton is the plaintiff, and he has no standing because he doesn't own the building.

And the second thing is -- is we've been talking -- this note came due April 1st of this year, so we've been working on this for, you know, six months. And in order to stop the sale, we'd also need a bond, I think, in the value of the note.

So there's no irreparable harm. There's only money damages here, so I don't -- the lender can't agree to a sale, and I don't think, legally, that the plaintiff has shown a reason to stop the sale.

THE COURT: It sounds like -- and correct me if I'm wrong. Have you two still been in negotiations even today to try and work this out before tomorrow's sale?

                    MR. WAKELAND: Not since -- not since we received the notice of this hearing, and we received -- we received -- we received notice of the hearing, which originally was scheduled for, I think, 11:00 o'clock this morning --

THE COURT: Uh-huh.

MR. WAKELAND: We received that today at about ten minutes after 12:00. All right? And

since that time I am unaware of any communications that we've had with the lender back and forth. Now, I -- I left the office -- I left the office at about 2:00 --

THE COURT: Uh-huh.

MR. WAKELAND: -- or 1:50 or so. I left the office at about 2:00 or 1:50, so I don't know if there have been any communications with the -- between us and the lender since that point in time.

MR. DUKE: Well -- gee. You know, from Orton's point of view, Your Honor, he's waited until the last -- the 11th minute and 59th hour almost hoping somebody would be able to work something out, but it hasn't.

MR. WAKELAND: Your -- Your Honor, we --

THE COURT: Uh-huh.

MR. WAKELAND: We have -- we have been

in communication with Mr. Orton for an extensive period of time.

THE COURT: Uh-huh.

MR. WAKELAND: We have been in communication with Mr. Orton attempting to refinance this note --

THE COURT: Okay.

MR. WAKELAND: -- all right? -- for an extensive period of time. All right. We did not hear from Mr. Orton until we provided him with notice that -- that the lender was foreclosing on this building. All right? And --

THE COURT: Hold on just one second. Okay?

Sir, is that your client in the back?

MR. DUKE: Mr. Orton.

MR. ORTON: Yes, it is, Your Honor.

THE COURT: I wasn't speaking to you. I'm speaking to your lawyer.

MR. DUKE: Would you like him to wait out in the hallway?

(There was a discussion off the record, and Mr. Duke escorted Mr. Orton out of the courtroom.)

MR. DUKE: You know, it's emotional for him, Your Honor. I apologize on Mr. Orton's behalf.

THE COURT: Uh-huh.

MR. WAKELAND: Judge, if I may continue --

THE COURT: You may. Go ahead --

MR. WAKELAND: We --

THE COURT: -- now.

MR. WAKELAND: Again, we -- we had attempted to communicate with him for a period of months. We did not hear from him until the lender filed this notice of foreclosure, and we notified him of that notice of foreclosure.

MR. DUKE: Well, then --

MR. WAKELAND: And this -- Mr. Orton -- Mr. Orton wrongfully placed the partnership in bankruptcy back in January of '09. He has repeatedly taken action that has hindered and interfered with the general partner's ability to -- to conduct business, do things for the partnership that the general partner needed to do in a timely manner to be able to avoid this foreclosure, and this is just the latest step that he's taken, which -- while he may think that they are beneficial acts, they have generally just been hindrances.

Since -- since the notice of foreclosure -- since we sent him the notice of foreclosure from the lender we have been in communication with Mr. Orton. We have communicated back and forth on -- on how we can negotiate with the

lender. We have -- several proposals have floated back and forth. They've been a litany of e-mails.

THE COURT: Uh-huh.

MR. WAKELAND: And -- and so at this particular point in time, while we would not like to see the foreclosure take place, we feel that -- that the lender is --

(Mr. Orton enters courtroom.)

MR. DUKE: Excuse me, Your Honor.

THE COURT: You know what? You know, stop right there. I think I'm done at this point because, you know, I can take a lot of things, but I'm tired of dealing with your client, and I don't think you can get your client under control.

It sounds like you all -- I don't know if you have some more talking you need to do.

I don't know what you're going to do with your client, sir, but I'm just not going to go forward on this today. All right? That's it.

(End of proceeding.)

THE STATE OF TEXAS )
)
COUNTY OF HARRIS )

I, Donna King, Official Court Reporter in and for the 164th Judicial District Court of Harris County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $____________ and was paid/will be paid by ____________________.

WITNESS MY OFFICIAL HAND this, the _____ day of __________________, 2009.

______________________________
DONNA KING, Texas CSR 6273
Expiration Date: 12/31/10
Official Court Reporter
164th Judicial District Court
Harris County, Texas
201 Caroline, 12th Floor
Houston, Texas 77002
(713) 368-6256